**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| Lindsay French,<br><br>    Plaintiff,<br><br>v.<br><br>190 Spring Street Management, LLC d/b/a Kempton of Charleston,<br><br>    Defendant. | CIVIL ACTION NO. 2:25-cv-13854-BHH-MGB<br><br>**COMPLAINT**<br>**(Jury Trial Demanded)** |

The Plaintiff, complaining of the Defendant, would show unto this Honorable Court as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff, Lindsay French, is a resident of Charleston County, South Carolina.

2. Defendant, 190 Spring Street Management, LLC d/b/a Kempton of Charleston ("Kempton" and/or "Defendant"), is a North Carolina limited liability company operating senior living facilities under the laws of the State of South Carolina in this judicial district.

3. Defendant was, at all times relevant, an employer within the meaning of Title VII, the Pregnancy Discrimination Act ("PDA"), the Pregnant Workers Fairness Act ("PWFA"), the American with Disabilities Act ("ADA"), and the Family and Medical Leave Act ("FMLA").

4. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 10, 2025, alleging discrimination based on sex/pregnancy, disability, and retaliation arising from her termination on January 2, 2025.

5. The EEOC issued a right-to-sue letter on September 16, 2025. This Complaint is timely filed.

6. Jurisdiction is founded upon 28 U.S.C.A. §§ 1331 and 1343.

7. The Defendant owns and operates a business in this judicial district, and all of the events or omissions giving rise to the claim occurred in this judicial district. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

8. Plaintiff was employed by Defendant from August 21, 2021, until January 2, 2025.

9. Plaintiff began her employment with the Defendant, serving as interim Campus Director at Shem Creek, before focusing her efforts on Kempton in November 2021.

10. Plaintiff played a central role in the successful opening and operation of the Kempton facility, including the admission of its first patients in March 2022 and achieving a zero-deficiency SNF certification survey in September 2022.

11. Plaintiff consistently received exemplary performance reviews and salary increases in August 2022, August 2023, and September 2024. She had never been disciplined, written up, or placed on a performance improvement plan at any time during her employment.

### Plaintiff's Pregnancy, Medical Condition, and Protected Leave

12. Plaintiff became pregnant in 2024. Due to complications and high blood pressure, her OB/GYN recommended an emergency C-section, triggering medically necessary leave beginning October 30, 2024.

13. Plaintiff's leave was approved under the FMLA, and she was cleared to return to work beginning January 2, 2025.

14. Prior to taking leave, Plaintiff and her supervisor Nicole Cook agreed that Plaintiff could work from home temporarily as she transitioned back to onsite duties.

15. Subsequently, on December 23, 2024, during Plaintiff's transition back to work, Ms. Cook informed Plaintiff that remote work would not be permitted despite previous assurances.

### Defendant's Conduct While Plaintiff Was on Protected Leave

16. While Plaintiff was on FMLA and maternity leave, Defendant engaged in investigations into alleged PTO discrepancies, alleged credit-card misuse, and alleged unauthorized use of a house located at 7 Ashton Street.

17. Defendant did not notify Plaintiff of these purported concerns, did not seek clarification, did not request documentation, and did not provide Plaintiff any opportunity to respond to the allegations—despite the fact that Plaintiff had no prior disciplinary history.

18. Plaintiff denies these allegations, asserts she adhered to applicable policies and had supervisory approval for PTO, and further contends that any purported issues were not raised with her prior to her termination and were used post hoc to justify the decision taken immediately upon her return from protected leave.

### Plaintiff's Termination

19. On January 2, 2025, the first morning of Plaintiff's return from FMLA/maternity leave, Ms. Cook and Carolyn Yliniemi-Hirschler informed Plaintiff that her employment was terminated effective immediately.

20. Defendant stated that the termination was "for cause" based on allegations never previously presented to Plaintiff and which Plaintiff denies.

21. Plaintiff was replaced by a male employee immediately following her termination.

22. The temporal proximity—termination mere hours after returning from maternity leave—combined with her record of excellent performance, lack of prior discipline, and Defendant's post-leave investigatory conduct gives rise to a strong inference of discriminatory and retaliatory motive.

**FOR A FIRST CAUSE OF ACTION**
(Discrimination in Violation of the Americans with Disabilities Act)

23. Plaintiff reiterates and realleges the allegations contained in the above paragraphs as if fully set forth herein.

24. Defendant is an employer as defined by the Americans with Disabilities Act ("ADA").

25. Plaintiff is an employee as defined by the ADA.

26. Plaintiff was a handicapped person as defined by the Code of Laws of South Carolina § 2-7-35, as amended, and the ADA at the time of this discrimination in that she experienced physical impairment following emergency surgery that substantially limited major life activities, including lifting, standing and physical exertion.

27. Plaintiff was a qualified individual with a disability and could perform the essential functions of her job with reasonable accommodations.

28. Plaintiff is guaranteed the opportunity to maintain employment without discrimination because of her disability pursuant to the ADA and Code of Laws of South Carolina § 43-33-530, as amended.

29. Upon information and belief, Defendant failed to undertake any good faith efforts, in consultation with Plaintiff to identify and make reasonable accommodations for employment.

30. Knowing of Plaintiff's disability, circumstances of her pregnancy, and emergency C-section necessitating early maternity leave, Defendant failed to allow Plaintiff to return to work

4

after approving her maternity leave, failed to allow Plaintiff to work remotely during leave as agreed upon, made plans to replace and discharge Plaintiff upon return from maternity leave, used maternity leave period to investigate Plaintiff's alleged bad acts to build a case for her termination, and terminated Plaintiff's employment immediately upon her return.

31.     Defendant retaliated against Plaintiff for requesting accommodations and for engaging in protected activity.

32.     As a direct and proximate result of Defendant's intentional unlawful actions towards Plaintiff based on her disability, Plaintiff has suffered and continues to suffer from emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, damage to Plaintiffs reputation, loss of income and other past and future losses.

33.     As a result of Defendant's actions, Plaintiff is entitled to lost wages, plus interest, payment for lost past and future benefits, front pay, mental anguish, emotional distress, compensatory damages, and attorney's fees and costs.

**FOR A SECOND CAUSE OF ACTION**
(Violation of Family Medical Leave Act)

34.     Plaintiff reiterates and realleges the allegations contained in the above paragraphs as if fully set forth herein.

35.     Plaintiff exercised her right to take leave pursuant to the Family Medical Leave Act of 1993 (29 U.S.C. §2601, *et seq*.).

36.     The Defendant is a qualified "employer" subject to the Family Medical Leave Act and this said statute is a federal statute.

37.     Defendant interfered with Plaintiff's FMLA rights by:

    a.  Altering the terms of her agreed-upon transition back to work;

    b.  Conducting adverse investigations during leave without involving her; and

  c. Terminating her employment on the very day she returned from protected leave.

 38. The Defendant's termination of Plaintiff following her emergency C-section and maternity leave constituted a violation of the Family Medical Leave Act of 1993 (29 U.S.C. §2601, et. seq.).

 39. Defendant's actions were done willfully, maliciously, wantonly, and were done in an intentional action of retaliation designed to damage the Plaintiff for requesting leave.

 40. As a direct and proximate result of Defendant's intentional unlawful actions towards Plaintiff based on her disability, Plaintiff has suffered and continues to suffer from emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, damage to Plaintiffs reputation, loss of income and other past and future losses.

 41. As a result of Defendant's actions, Plaintiff is entitled to lost wages, plus interest, payment for lost past and future benefits, front pay, mental anguish, emotional distress, compensatory damages, and attorney's fees and costs.

**FOR A THIRD CAUSE OF ACTION**
(Discrimination in Violation of Title VII, as Amended by the Pregnancy Discrimination Act)

 42. Plaintiff reiterates and realleges the allegations contained in the above paragraphs as if fully set forth herein.

 43. Plaintiff is a member of a protected group on the basis of her sex and gender. Plaintiff was an employee for a position that she was qualified for and was subsequently discriminated against and denied a job due to her sex and gender (female) and pregnancy in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and the Pregnancy and Discrimination Act.

 44. Plaintiff performed her job at an exemplary level, with no history of disciplinary issues.

45. Defendant terminated Plaintiff immediately upon her return from maternity leave and replaced her with a male employee.

46. Defendant's cited reasons for termination were pretextual because:

   a. the allegations were never previously raised;

   b. they conflicted with Plaintiff's documented performance;

   c. Plaintiff had supervisory approval or valid explanations for the acts alleged; and

   d. Defendant conducted its "investigation" only while Plaintiff was on protected leave.

47. The timing and circumstances support a plausible inference that Plaintiff was terminated because of her sex and pregnancy, in violation of Title VII.

48. Defendant was wanton, and intentional in the discrimination of the Plaintiff in the following particulars, to wit:

   a. In discharging the Plaintiff and otherwise discriminating against the Plaintiff with respect to her compensation, terms, conditions, or privileges of employment due to her sex and pregnancy.

49. Plaintiff's sex (female) and pregnancy was a determining factor in the retaliation and disparate treatment of the Plaintiff. But for the Plaintiff's sex and pregnancy, she would not have been terminated.

50. Defendant, its agents and employees, without just cause refused to provide accommodations to Plaintiff due to her medical disability and continues to refuse to employ Plaintiff forcing her to lose pay and all of her benefits in violation of the Pregnancy Discrimination Act.

51. The acts and conduct of Defendant set forth above were against public policy and were conducted in bad faith.

52. As a direct and proximate result of Defendant's intentional unlawful actions towards Plaintiff based on her disability, Plaintiff has suffered and continues to suffer from emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, damage to Plaintiffs reputation, loss of income and other past and future losses.

53. As a result of Defendant's actions, Plaintiff is entitled to lost wages, plus interest, payment for lost past and future benefits, front pay, mental anguish, emotional distress, compensatory damages, and attorney's fees and costs.

### FOR A FOURTH CAUSE OF ACTION
(Failure to Accommodate, Discrimination, and Retaliation in Violation of the Pregnant Workers Fairness Act)

54. Plaintiff reiterates and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

55. Plaintiff experienced pregnancy-related medical limitations, including complications requiring an emergency C-section, and requested reasonable accommodations such as a temporary work-from-home transition.

56. Defendant revoked agreed-upon accommodations; failed to engage in the interactive process; failed to consider or provide reasonable accommodations; and terminated Plaintiff immediately upon her return from leave.

57. The actions and omissions of Defendant constitute violations of the PWFA.

58. Defendant retaliated against Plaintiff for requesting accommodations.

59. As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer lost wages and benefits, emotional distress, and other economic and non-economic damages, in amounts to be proven at trial.

## **FOR A FIFTH CAUSE OF ACTION**
(Violation of the South Carolina Human Affairs Law)

60. Plaintiff reiterates and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

61. The Defendant's wrongful discrimination, preferential treatment and inappropriate behaviors as set forth aforesaid constituted a discrimination of the Plaintiff due to her sex/gender and her pregnancy which constitutes a violation of clear mandate of public policy of the State of South Carolina as articulated in the South Carolina Human Affairs Law.

62. As a direct and proximate result of the discriminatory acts and practices of the Defendant, the Plaintiff has suffered and continues to suffer from emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, damage to Plaintiff's reputation, loss of income and other past and future losses.

WHEREFORE, Plaintiff prays that the following relief be granted:

a. Judgment in favor of the Plaintiff and against Defendant for all causes of actions in an amount which is fair, just and reasonable, and for compensatory damages;

b. Prejudgment interest, costs and attorneys fees as may be allowed by law;

c. Judgment in favor of the Plaintiff and against Defendant with back pay and associated benefits she would have earned with all lost or diminished benefits such date to be determined by the trier of fact;

d. Judgment in favor of the Plaintiff and against Defendant for front pay and any other work benefits she lost in an amount to be determined by the trier of fact;

e. Judgment in favor of the Plaintiff and against Defendant for pain and suffering, embarrassment and humiliation, and emotional distress in an amount to be determined by the trier of fact; and

f. Judgment against Defendant, in such an amount of actual damages, punitive damages, attorney fees, costs of this action and any other relief this Honorable Court deems allowable under law, and just and proper.

                ROSEN HAGOOD, LLC

                By:  s/*Elizabeth F. Nicholson*
                      Elizabeth F. Nicholson, Federal I.D. No. 12402
                      40 Calhoun Street, Suite 450
                      Charleston, SC  29401
                      (843) 577-6726
                      (843) 724-8036 (fax)
                      enicholson@rosenhagood.com

                ATTORNEYS FOR PLAINTIFF

Charleston, South Carolina
December 12, 2025